BROWN, DANIEL & CO. v. P. B. HAWKINS.

It is sufficient to authorize a warrant of attachment, if the affidavit set forth " that defendant was about to assign, dispose of, or secrete his property with intent to defraud his creditors," and then specifies " that the said property was secretly removed out of its usual place, after night, and found several miles distant, and when it was overtaken late at night, the persons having possession thereof made conflicting statements as to where they were going, and whose property it was they had."

The Court has the power to allow the amendment of an affidavit upon which a warrant of attachment had issued, although the former affidavit is wholly insufficient.

*Hughes* v. *Person*, 63 N. C. 548; *Clark* v. *Clark*, 64 N. C. 150, cited and approved.

Motion to discharge a warrant of attachment, heard before *Moore, J.,* at Spring Term, 1871, EDGECOMBE Superior Court.

The plaintiffs in their complaint alleged that the defendant was indebted unto them in the sum of five hundred dollars, contracted on behalf of the defendant through his agent, one B. F. Hanks. The affidavit upon which the plaintiffs prayed for an attachment, alleged " that from information given to them, they are satisfied that the defendant is about to assign, dispose of, or secrete certain property, to wit: sundry mules, with intent to defraud his creditors." The warrant of attachment was levied upon four mules, and several other articles of property.

The defendant in his answer denies that he owes the plaintiffs anything, or that the said Hanks was in any way the agent of the defendant at the time the alleged goods were purchased.

The plaintiffs asked for, and obtained leave to amend their affidavit upon which the warrant of attachment issued, which amendment is as follows: " That the facts upon which their apprehension that the defendant was about to assign, dispose, or secrete the property therein mentioned, with intent to defraud his

creditors were based, are, that early in the night of March 10th, 1871, they ascertained that certain mules of the defendant, (who resided in Franklin County,) which had been in Tarboro' for several months, had just been sent from Tarboro' after night, by order of one Wynne, the agent of the defendont, who had arrived in Tarboro in the afternoon of said 10th day of March, except two of said mules which had been detained by one Lipscomb, he having obtained possession in some way; that this affiant (R. C. Brown, one of the plaintiffs,) was deputed by the Sheriff of said County of Edgecombe, to serve the warrant of attachment issued on said night, in favor of W. M. Pippin, against the defendant, and in order to execute the same, pursued said mules and overtook them about eleven miles from Tarboro; that the drivers of said mules when asked whose mules they were, replied that they did not know, but afterwards admitted that they belonged to the defendant, and informed the affiant that they went out of Tarboro by way of a back street, and were told not to stop or rest till they had reached a point beyond the falls of Tar river, which is beyond the limits of Edgecombe County.

The defendant filed a counter affidavit, in which he alleged, that he was never a member of the firm of J. F. Pickerell & Co.; that he contracted with said firm to do certain work on the Wilmington & Tarboro Railroad; that he commenced work in May, 1869, and finished in May, 1870; that when he completed his work, at the request of Gen'l Lewis, the President of said road, he left six mules, two wagons, &c., and turned them over to B. F. Hanks, the agent of J. F. Pickerell & Co., with the understanding that he was to be paid for the use of them; that on the 8th or 9th of March, 1871, whilst the defendant was engaged in public duties as a State Senator, he spoke to James Wynne, in Raleigh, to go to Tarboro after his mules, who consented to go. The defendant informed him he would get to Tarboro about half past two o'clock, P. M., and the night train left at 8 o'clock, P. M., and that he thought

he would have ample time; defendant gave him no instructions, nor intimation that anything was to be done secretly or clandestinely, for the defendant did not believe that he owed a dollar in Tarboro; that he paid off the plaintiffs' account in May, 1870, and after that time neither B. F. Hanks nor any other person was authorized to buy anything for him in Tarboro.

The defendant further averred, that he sent for said teams solely because he needed them on a large railroad contract he had in Chatham county; and that he knows nothing as to what the drivers told the plaintiff, R. C. Brown.

B. F. Hanks in his affidavit declares that after the 4th of December, 1869, he was never the agent or the book-keeper of the defendant, and that since that time, he had never to his knowledge, made any purchases on account of the defendant; that he was the agent of J. F. Pickerell & Co., and made purchases in their name, and that the accounts with the plaintiffs, are all due either from J. F. Pickerell & Co., or from affiant individually. He also deposed that Wynne came after the mules and got them, first going over to the plaintiffs' store and purchasing chains, collars, &c.

Several other affidavits were offered by the plaintiffs and defendant, to sustain the respective affidavits offered by them.

The defendant moved to discharge the warrant of attachment; upon consideration whereof, his Honor adjudged that said warrant be, and the same is hereby discharged; from which the plaintiffs appealed.

*Battle & Sons*, for plaintiffs.
*Bragg & Strong*, for defendant.

PEARSON, C. J. The first affidavit is insufficient, but the amended affidavit comes fully up to the requirement of the statute. *Hughes* v. *Person*, 63 N. C., 548 It sets out facts and circumstances showing probable cause, and that in suing out

the attachment, the plaintiffs acted with *bona fide*, and under a just apprehension that the property was about to be "put out of the way."

The counter affidavit of the defendant, explains the circumstances, and removes the appearance of a fraudulent intent, in respect to the defendant personally, but it leaves the very suspicious fact, that after night fall, the mules were clandestinely taken out of the town of Tarboro, and run off to a distance of some ten miles, when they were captured. Unexplained, there could be no satisfactory explanation, except by the affidavit of Wynne, the defendant's agent. No reason is given for not filing it. This leaves the case of the defendant under a cloud, and he falls within the operation of the rule, *facit per alium facit per se*, and is affected by the conduct of his agent Wynne, and of his sub-agents, the two men who were running the mules out of the County.

These facts and circumstances would have been held sufficient under the old system of procedure, to defeat a motion to discharge a sequestration, on the principle, that where there is reasonable ground of doubt in regard to the merits of the controversy, the property being in *custodia legis*, will be kept there, until the matter be decided.

Under the C. C. P., the principle applies with greater force, for the defendant has it in his power, as of course, to obtain an order for the discharge of the property, by giving an undertaking to pay the judgment, in the event that the plaintiffs should succeed. Unless the defendant should be insolvent and unable to give the undertaking, there is no reason why this course should not have been adopted, and an action brought against the plaintiffs, for wrongfully and maliciously suing out the attachment, and thus the matter would have been put squarely before a jury for final decision, instead of imposing on the Court the duty of hearing the matter upon affidavits, and passing on it, as a mere preliminary to the motion, which can have no further effect.

BROWN, DANIEL & CO. v. HAWKINS.

It is a circumstance in favor of the defendant that no allegation of his insolvency is made. As he is solvent, and able to give the undertaking, he would, if well advised, have adopted the course indicated, without wasting time on the skirmishing line.

In regard to the amended affidavit, the facts are so obscurely set out on the record as to leave this Court in doubt as to the order in which the several movements were made. If the papers were before the Judge as a foundation for the motion to discharge the attachment on the counter affidavits filed by defendant, then the case falls under *Clarke* v. *Clarke*, 64 N. C. 150. But if the papers were before the Judge, with a view of allowing the plaintiff to amend the affidavit, we are of opinion that he had power to allow the amendment under C. C. P., sec 131. The criticism on the affidavit that it is vague and uncertain in that it avers that the defendant was about to assign, dispose of or secrete the property—whereas it ought to have specified distinctly *one* of these three modes by which the alleged fraudulent intent was to be accomplished—is not tenable. The statute puts the three modes in the alternative, and, in this respect, the affidavit is sufficiently definite by following the words of the statute; for it may be out of the power of the party to designate the precise mode. Such was the construction put upon the statute in regard to stealing slaves. The words are, " shall by stealing or seduction, or by force, deprive the owner of his slave, with intent," &c., and it was held that the indictment need not specify any one of the three modes, but it was sufficiently certain to follow the words of the statute.

There is error.

Order discharging the attachment modified by refusing the motion, but allowing the defendant to take the property, provided an undertaking be filed as required by C. C. P., sec. 213.

PER CURIAM.                                      Error.