BRUFF, FAULKNER & CO. v. STERN & BRO.

*Attachment—Fraud—Verification by Agent.*

1. The court will not surrender property *in custodia legis* if its detention appear reasonably necessary to protect the right of the plaintiff until the trial.

2. It appeared from the affidavit for an attachment (made by plaintiff's agent) and the accompanying exhibits, that the defendants, partners in trade, had made an assignment of their entire stock to the father-in-law of one partner, in trust, after the payment of the expenses incident to the assignment and a five hundred dollar personal property exemption to each partner, to sell privately the goods, &c., and apply

the proceeds to the satisfaction of the firm debts, the trustee being a preferred creditor in an amount sufficient to absorb the entire assets devoted to the debts. The trust deed contained a proviso that the general creditors should be paid only upon the condition of their releasing all claims against the individual partners. The affidavit also alleged that the trustee, who lived in a distant state, had delegated his charge to his own son and the assigning partners. It further appeared that in about four months immediately preceding the assignment, the assignors had converted about five thousand dollars worth of their stock into money, of which the creditors had received not more than one ninth;

*Held,* that such affidavit, embodying the foregoing facts, and stating that the defendants had disposed of and secreted their property, with intent, *as the agent believed,* to defraud the plaintiffs, was sufficient to warrant the continuance of the attachment until the trustee and all persons interested could submit their conflicting statements and interests to the decision of a jury.

*Held further,* that the personal property exemptions provided for by the deed should be paid out of the first money coming into the trustee's hands, and not out of the residue liable to the claims of the general creditors.

3. The provisions of C. C. P., § 117, requiring that verifications made by agents shall state why they are not made by the principals, and that the material facts are personally known to the agent, apply only to *actions* in which the responsive pleadings must also be under oath, and not to those ancilliary remedies intended merely to secure the fruits of an ultimate recovery, in seeking which greater latitude is allowed.

(*Monroe* v. *McIntyre,* 6 Ire. Eq., 65; *Heilig* v. *Stokes,* 63 N. C., 612; *Ponton* v. *McAdoo,* 71 N. C., 101; *Brown* v. *Hawkins,* 65 N. C., 645; *Rose* v. *Coble,* Phil., 517; *Lassiter* v. *Davis,* 64 N. C., 498; *Burns* v. *Harris,* 67 N. C., 140, cited and approved.)

MOTION to Vacate an Attachment, heard at Spring Term, 1879, of PITT Superior Court, before *Seymour, J.*

Upon affidavit of an agent of the plaintiffs an attachment issued against the defendants, and the sheriff by virtue thereof seized certain property of defendants, who subsequently upon notice moved to dissolve the order of attachment, which motion was denied by the court; and it appearing that issues of fact were raised by the intervening interests of a trustee and of the creditors of defendants, the court

ordered the case to be set for trial before a jury. The facts are fully stated in the opinion of this court. Defendants appealed from the order of the judge below.

*Mr. W. B. Rodman,* for plaintiffs.
*Messrs. Gilliam & Gatling,* for defendants.

SMITH, C. J. The plaintiffs, at the time of suing out their summons on the 13th day of January, 1879, applied for an attachment against the goods of the defendants upon an affidavit made in their behalf by one George L. Pender, their agent.

The affidavit states that the defendants, on or about the 8th day of January, 1879, made an assignment of their stock of goods and entire visible estate to one A. Ostheim, of New York, the father of the wife of the defendant, Max. Stern, and an alleged creditor of the firm to the amount of forty-five hundred dollars or thereabouts, in trust after payment of expenses, to pay to each assignor the sum of five hundred dollars, his personal property exemption, and then in trust for the creditors, priority being secured to the debt due the trustee, the aggregate of the debts being about ten thousand dollars; and it alleges that the fund is insufficient to reach beyond the preferred debt, that the deed confers on the trustee power to sell privately, and the trustee had returned to New York, leaving the property in the hands of the assignors and his own son, thereby affording ample opportunity for the fraudulent removal and disposition of the goods; and that upon information, between September 1st, 1878, and the date of the assignment, the defendants had disposed of a large part of their stock of goods in their two stores at Tarboro and Williamston to the amount of $5,000, of which only about $570 has been applied to the payment of their large indebtedness, and that this money is not included in the assignment, and is now concealed and secreted, and that

affiant is informed and believes that the defendants have assigned and disposed of and secreted their property "with intent to defraud" the plaintiffs. Upon this affidavit the attachment issued to the sheriff, who seized and took into his possession the various articles enumerated in his return endorsed on the writ.

After notice, the defendants appeared before *Seymour, J.,* on the 24th day of February, and moved for an order discharging the attachment, and in 'support thereof filed affidavits of themselves, of the trustee and others; the plaintiffs also filed additional affidavits to sustain the order. At the same time the said A. Ostheim was allowed to interplead, and set up his title to the property. The deed of assignment is also put in as evidence. Upon hearing the motions, that of the trustee to be made a party is allowed, and the issues of fact raised by the interpleader directed to be tried before a jury, and the motion to dissolve the attachment is refused, from which latter ruling the defendants appeal.

The evidence read before the judge is conflicting and it is unnecessary, if in such case it is our duty under recent constitutional amendments, to pass upon its force and effect. Unless there was manifest error, we should be reluctant to disturb the conclusions to which the mind of the judge is brought in weighing the evidence.

The grounds of the motion to dissolve, as set out in the record, are numerous, and will be considered in their proper order of presentation. They are as follows:

1. The defendants did not dispose of their property with intent to hinder, delay or defraud their creditors.

2. The defendants have not concealed, nor do they now conceal any moneys or other things of value with intent to hinder, delay or defraud their creditors.

3. The affidavit does not impute to the trustee and pre-

ferred creditor, A. Ostheim, any knowledge of, or participation in, the alleged fraud of the defendants.

4. The affidavit fails to allege the value of the property to be attached to be in excess of the exemptions allowed the defendants.

5. The exemptions were not set off to the defendants before the sheriff's seizure.

6. The agent who made the affidavit was not competent to make an affidavit on which an attachment could rightfully issue, and it does not contain the statements required in verifying a complaint by an agent. C. C. P., § 117.

The sufficiency of these exceptions is alone subject to our review. Exceptions 1 and 2 may be considered together.

The assignment was made about the date when the last note sued on fell due, after, as the affidavit of the agent asserts, some $5,000 worth of the stock had been disposed of within a little more than four months preceding, whereof about one-ninth only had been applied to outstanding liabilities of the firm. The assignee was by marriage a near relation of the senior partner, and resided in New York, rendering necessary the supervision of others over the property, and in executing the trusts. It does not appear that the proceeds of the sales since the assignment have been appropriated to the payment of the personal property exemptions, but to the debt of the preferred creditor, thus leaving an incumbrance on the property undischarged, which should have been removed.

The deed, moreover, contains a clause disposing of what remains of the trust fund, after payment of the debt due Ostheim, and two small debts next preferred, as follows : " If, when all the costs, charges, commissions and expenses, the personal property exemptions of the said M. Stern and Simon Stern, and the debts due said Ostheim and Forbes and Whitehead, specified in the first, second, third and fourth clauses, have been paid and discharged, there shall

still remain a balance in the hands of said Ostheim, he shall estimate what per centage of all the other debts hereinbefore enumerated the said balance will pay, and shall notify all the creditors hereinbefors named, what such per centage will be, and that he will pay such amount on their respective debts, provided *they will discharge the said M. Stern and Simon Stern from all further liability.* Should any of the creditors assent to receive the said per centage of their debts and *discharge the said M. Stern and Simon Stern from further liability,* the said Ostheim shall thereupon pay such per centage to him or them, taking their discharge under seal. But if any refuse to assent, then the said Ostheim *shall not pay them such per centage,* but shall pay the same to the said M. Stern and Simon Stern, or their assigns."

The effect of such a provision in a deed of trust we do not propose now to discuss, and refer to it in connection with other facts stated in the first affidavit, only to show the propriety of not allowing a fund now in the hands of an officer of the court and under its control, to be placed beyond the reach of the plaintiff's recovery by a premature decision of the merits, upon a review of the interlocutory order by which it is now secured. See Burrill on Assignments, §§ 193, 195, where the effect of such a provision is discussed. The evidence produced upon the hearing was conflicting, and having some probable grounds in support of the plaintiff's claim, presents a proper case for the application of the rule, that the court will not surrender property *in custodia legis,* if it appear reasonably necessary to protect the rights of the plaintiff until the trial. *Monroe* v. *McIntyre,* 6 Ire. Eq., 65; *Heilig* v. *Stokes,* 63 N. C., 612; *Ponton* v. *McAdoo,* 71 N. C., 101.

If the deed exhibited at the hearing was not made a part of the original affidavit, it may nevertheless be considered in passing upon the motion to dissolve and may help out a defective affidavit. *Brown* v. *Hawkins,* 65 N. C., 645.

Taking the affidavit to be true, its statements of the acts of the defendants in making the assignment and secreting a part of their effects with the intent charged upon information and belief, is sufficient to warrant the process under C. C. P., § 197. These exceptions are therefore overruled.

Exception 3. The third exception is, that if the deed was made with a fraudulent intent, the trustee and creditor most interested did not participate therein, and consequently the deed is not invalid under the decision in *Rose* v. *Coble*, Phil., 517, and *Lassiter* v. *Davis*, 64 N. C., 498. Whether the trustee knew of or participated in the fraudulent purpose of the assignors in the making of the deed, or by taking benefit under it, and what weight the evidence ought to have upon the mind of a jury when charged to pass upon such issues, it is not our province thus prematurely to determine, or indeed to intimate an opinion. This must be left to be passed on at the final trial, and we are not at liberty now to surrender the fund by assuming that there is no evidence of such complicity. The trustee, Ostheim, is admitted a party, and this question will arise between him and the plaintiffs, but it cannot be raised by the defendants as to whom it is quite sufficient that *they had a fraudulent intent* in making the conveyance. This exception is also overruled.

Exceptions 4 and 5. It appears from the affidavit of Jonas Ostheim, put in possession of the property by his father, that he has realized from the assignment by sales and collections, about $3,500 in money, a sum ample to pay the exemptions, and out of which, by the terms of the deed, they ought to be paid. The exemptions should be satisfied out of the money in the hands of the trustee and not become a charge upon the remnant of the assigned property levied on under the attachment.

It may be further suggested that it no where appears that application was made before the seizure by the officer to set apart any exempted property, and indeed none could be

claimed by the individual partners out of the partnership assets, except by their mutual consent. *Burns* v. *Harris*, 67 N. C., 140. The affidavit moreover charges a fund to be in the defendants' hands, unappropriated to creditors, largely in excess of their claim, and *concealed*, out of which, if true, their exemptions should be retained, and the law will make the application. This exception cannot be sustained.

Exception 6. The incapacity of the plaintiffs' agent to make the affidavit, unless he sets out the facts as required in verifying complaints under C. C. P., § 117, and the defect in the form of the affidavit in this respect : As the complaint, filed on oath, requires an answer from the defendant on oath, and thus entails on him the necessity of a careful and truthful statement, not necessary under the old forms of pleading in courts of law, the new system requires a personal verification of the complaint, or if made by an agent, that it shall appear further why it is not made by the plaintiff and that the material facts are personally known to the agent. C. C. P., § 117.

The reason does not apply to an affidavit required in seeking those ancillary remedies which the code admits to secure the fruits of an ultimate recovery. Hence it is only necessary that " it shall appear by affidavit," without stating by whom to be made on behalf of the plaintiff, that such facts exist as warrant the issuing of the attachment. C. C. P., § 201. This exception is also overruled.

Without intending to express any opinion upon the controverted facts, or the inferences to be drawn from the conflicting affidavits, we simply sustain the ruling of the judge, by which the attachment remains in force until the trial.

The defendants have no just grounds of complaint, for whoever may be entitled to the goods, they certainly have no claim to them except to the extent of the personal property exemptions, and these are equally secured whether the assignment prevails, or the superior title vests under the

seizure. They can have, therefore, no direct interest in dissolving the attachment, nor motive, except to give effect to their conveyance to the preferred creditor. The trustee is now a party to the action, and the title to the property will be directly put in issue between him and the plaintiffs We leave it to the arbitrament of that tribunal to whom the law commits the decision of all material questions of fact.

No error.                                        Affirmed.