WM. DEVRIES & CO. v. D. L. SUMMIT.

*Process—Sunday—Arrest and Attachment.*

1. It is unlawful for an officer to execute any writ or other process on Sunday. Rev. Code, ch. 31, § 54.

2. The validity of an order of arrest and warrant of attachment is determined upon facts alleged in the original affidavit and existing at the time when the proceeding is instituted, not upon new matter which may have afterwards transpired.

3. Upon vacating such warrant, the property attached and money collected under any process or order in the action, shall be delivered to the defendant. C. C. P., § 212.

(*Clark* v. *Clark*, 64 N. C., 150; *Wilson* v. *Barnhill*, *Ib.*, 121; *Brown* v. *Hawkins*, 65 N. C., 645; *Bear* v. *Cohen*, *Ib.*, 511; *Palmer* v. *Bosher*, 71 N. C., 291; *Skinner* v. *Maxwell*, 66 N. C., 45; *Bruff* v. *Stern*, 81 N. C., 183; *Perry* v. *Tupper*, 70 N. C., 538; *Meroney* v. *Wright*, 84 N. C., 336, cited and approved.)

MOTION to vacate an order of arrest in an action pending in GASTON Superior Court, heard at Chambers on May 14, 1881, before *Eure, J.*

The plaintiffs instituted their action on December 18th, 1880, to recover a debt alleged to be due for goods sold and delivered, and on the same day obtained an order of arrest and warrant of attachment upon the affidavit of Harris Hopkins, their agent and salesman, who states the amount of the claim, and further on information and belief;

1. That the defendant is about to leave the state and with intent to defraud his creditors;

2. That with like intent he is about to remove his property beyond the limits of the state;

3. That he is, and for some time past has been concealing himself to elude the service of process and avoid the payment of his debts;

4. That he has collected and has under his control about nine hundred dollars, paid upon an insurance on his stock

of goods that were destroyed by fire, and there is still due on the policy near twelve hundred dollars, which if collected will be wholly lost to the creditors.

The arrest of the person of the defendant was made on the next day, Sunday, and several writs of attachment against his estate issued to different counties without result, except as to those directed to the sheriffs of Edgecombe and Gaston, the former of whom levied the attachment upon the residue of the insurance money due from the Pamlico Banking and Insurance Company of Tarboro, which is returned at the sum of $982.38; and the latter seized and took into possession a buggy belonging to the defendant.

On February 12th, 1881, another action was commenced by the plaintiffs and other creditors, reciting and associating their several demands, when in both causes the following order was entered in reference to the insurance fund :

Whereas it appears that the Pamlico Banking and Insurance Company of Tarboro, N. C., is indebted to the defendant in the above stated causes in the sum of $982.38, and that the same has been levied on by the plaintiffs in the first above named cause by virtue of an attachment issued therein ; therefore by consent of attorneys for both plaintiffs and defendant in both said causes, it is ordered, that the said Pamlico Banking and Insurance Company pay the full amount of said debt into the office of the superior court clerk of Gaston, and that the same when paid in be retained to await, and be subject to further orders in said cause; both parties plaintiffs and defendant reserving all rights and claims to said fund, and waiving no right, except that the money be paid into the office, and that when so paid in, the said company shall be discharged from all liability therefor, and the attachment against it be discharged so far as it effects said company.

The order is subscribed officially by the clerk, and also bears the attesting signatures of the several attorneys (who

represent the several creditors in the action) and the defendant, in approval.

Upon the return of the summons, at spring term, the plaintiffs filed their complaint in the first suit, and charged that the defendant purchased and obtained possession of the goods at the price of $938.85 with the fraudulent purpose which he is still endeavoring to carry out, of avoiding the payment thereof. The defendant also filed an affidavit accompanied and sustained by the affidavits of several others, specifically denying the charges contained in the complaint, and those upon which the arrest was ordered, and stating further that he was under twenty-one years of age when the debt was contracted, as well as when the writ issued. The complaint verified and used as an affidavit is supported by that of one G. T. Coleman, the agent of another creditor firm interested in the second suit, in which he testifies to the defendant's concealing himself and avoiding an interview with affiant on the 28th day of December, when affiant sought to collect the account due his firm, and reiterates upon information the allegation of the defendant's possession of a large sum of money which he refuses to appropriate to his debts, but fraudulently withholds and conceals to avoid their payment. The evidence, which it is unnecessary to set out more in detail, was presented to, and heard by the presiding judge upon a motion to vacate the order of arrest and warrant of attachment, made before the clerk and by consent transferred to be decided by him. His Honor in passing upon the application of the defendant found as facts, that,

1. The defendant was not about to depart the state to defraud his creditors;

2. Nor to remove his property therefrom with such intent;

3. Nor did he conceal his person to elude the service of process or defeat the claims of creditors; and that

4. He was an infant when the goods were bought and re-ceived.

Thereupon judgment was rendered vacating the order of arrest—discharging the bail bond, dissolving the attach-ment and directing the restoration of the property attached and the payment of the money deposited to the defendant, or to his agent; from which ruling the plaintiffs appealed.

*Messrs. Hoke & Hoke*, and *Battle & Mordecai*, for plaintiffs. *Messrs. Schenck & Cobb*, for defendant.

SMITH, C. J., after stating the above. It is insisted that the ruling is erroneous, in that, the findings of fact are im-perfect, and do not dispose of all the controverted matters upon which the revoked order and warrant depend, and especially in the omission to pass upon the charge of the defendant's evasion and concealment (while holding a large amount of money) of his person from the witness, Coleman, when in search of the defendant.

We think the objection untenable for several reasons.

The regularity and validity of these ancillary remedies must be determined upon the facts existing, and made to appear at the time when they were sought and awarded, and not upon what may have afterwards transpired. The subsequent conduct of the defendant is pertinent to an inquiry as to the truth of the allegations then made, and as the development of a preconceived fraudulent purpose, but it is not substantive and sufficient evidence to sustain the clerk in issuing the writs upon the proofs then laid before him of the defendant's acts, and his imputed fraudulent purpose, of which they were in furtherance. The testimony of Coleman is little more than a narrative of his own un-successful efforts to find the defendant, and urge upon him the payment of the claim of his principals in his hands for collection, and while the fact of concealment is in itself con-

tradicted by other witnesses, if accepted as true, it only shows that the defendant sought to escape a personal interview and the importunity of a pressing creditor—not to avoid an officer or legal process; and this constitutes no ground for arrest or attachment.   Besides, this occurred ten days previous to the awarding of either, and cannot avail in justification of their issue.   The additional evidence admissible upon the hearing of the motion to rescind, is confined to the proof or disproof of the facts alleged in the original affidavit, and is not to be extended to new matter since transpiring.   New matter may however warrant a second issue of these auxiliary remedies, if the first be adjudged irregular, or the facts charged be shown to be without foundation afterwards upon an application to recall them.

The cases cited (*Clark* v.   *Clark*, 64  N.  C., 150;  *Brown* v. *Hawkins*, 65 N. C., 645 ; and *Palmer* v. *Bosher*, 71 N. C., 291) are not antagonistic to the view we have expressed. In these there was a substantial defect in the form of the affidavit, which was removed, and the necessary absent allegations supplied from the opposing proofs offered in the motion to vacate.   They did not change the original grounds of the application, nor furnish new material in its support.   But where the evidence goes beyond this, and is offered to show other and different ground to sustain the action of the clerk, that originally laid before him being sufficient to warrant the arrest, but being effectively controverted, to allow this would be to legalize and render right that which was erroneous and wrongful when done.   Even if this were competent, the refusal to act upon the new facts alleged rests in that sound judicial discretion the exercise of which we cannot undertake to revise.   The proper course in such a case would be to ask for another order of arrest and attachment. *Wilson* v. *Barnhill*, 64 N. C., 121.

Delivering the opinion of the court in *Palmer* v. *Bosher*,.

Rodman, J., uses this language : " We do not wish to be understood as holding that an affidavit for an attachment defective in substance, may be amended so as to sustain the warrant of attachment. We are inclined to think that, as in the parallel case of an injunction, if the original affidavit was insufficient in substance to sustain the attachment, it could not be amended so as to do so."

For a stronger reason should a plaintiff, who has assigned grounds legally sufficient to authorize the arrest and seizure, not be permitted, when they are falsified upon the proofs, to change them and assign others. A defendant would never be safe if he could be arrested on one charge, and that failing, be held in custody upon another.

2. The service of the writ and the arrest of the defendant on Sunday were also unlawful, and in violation of the statute, Rev. Code, ch. 31, § 54, which so expressly declares.

3. The appellants further except to so much of the judgment as directs a return of the money and property attached to the defendant.

It will be noticed that the deposit of the money paid in by the insurance company with the clerk, is on the terms that it be " retained in said office to await and be subject to the order of the court." This is also the requirement of the statute which provides, upon a dissolution of the attachment, that " *all the proceeds of sale and moneys collected in such action remaining in the hands of any officer of the court, under any process or order in such action, shall be delivered or paid to the defendant or his agent and released from the attachment.*" C. C. P., § 212. The undertaking required in the next section is not necessary when the warrant " on its face appears to have been issued irregularly, or for a cause insufficient in law, or false in fact." *Bear* v. *Cohen*, 65 N. C., 511.

Upon a review of the whole case, we discover no error in the record and affirm the ruling of the court below.

No error. Affirmed.

In DEVRIES and others v. SUMMIT and others at this term :

SMITH, C. J.   This action commenced on February 12th, 1881, is prosecuted in the name of the separate creditors uniting as plaintiffs, against their common creditor, Summit, and the associate defendants who are charged with co-operating and aiding in the attempt to secrete and screen his property from the payment of their several demands. At the same time, and upon the affidavits of agents of some of the parties plaintiff, one of which bears date on the 5th day of that month, an order of arrest was obtained and a warrant of attachment awarded, the proceedings under which were essentially similar to those had in the single action of the plaintiffs, Devries & Co., that have been considered and decided in their appeal.

Upon the hearing of the defendants' motion to vacate the arrest and attachment, and the numerous affidavits heard in support of and in opposition thereto, the judge acting in place of the clerk, with consent of counsel, finds as facts:

1. That the defendant did not conceal himself to avoid the service of legal process;

2. That he has committed none of the acts that authorize the issue of either writ, and

3. That he was under twenty-one years of age when the debt was contracted.

Thereupon the judge vacated the arrest, discharged the attachment, and directed the return of the money deposited, and the other property attached, to the defendant.   From this order the plaintiffs appeal.

We see no sufficient reasons for reversing or modifying the ruling in this case, that do not apply with equal force to the other.   The object of both is to enforce contract liabilities incurred in the purchase of goods, and by aid of the auxiliary remedies to pursue and subject the property of

the debtor to their satisfaction.   The present complaint also asserts the obligation resting upon the debtor, and imputes to him fraud in contracting the debts, and an intention not to pay for the goods then entertained and since fully manifested in his persistent efforts to conceal and keep his funds beyond the reach of creditors, and his refusal to appropriate any part of them to the payment of what he owes.   The action does not proceed upon the idea of a rescission of the original contract by the defendant's repudiation of his own obligation on the plea of legal incapacity, and the revesting of title to the goods in the vendors respectively, for the complaint alleges that they did not know at the time of sale of the infancy of the debtor, "and do not now know such to be the fact," thus putting in issue the anticipated defence.

The rule is well settled that where an infant has purchased property, and has it in possession after coming of age, and then avoids the sale, he must restore it; and for a tortious use or disposition of any part of it after such avoidance, he renders himself liable to those from whom it was obtained.   But he cannot be sued in tort for any disposition made of the goods previously and during his minority, any more than he can be held responsible upon the contract. Tyler Inf. and Cov., § 36 ; 2 Kent Com., 240 ; 1 Am. Lead. Ca., 115; *Kitchen* v. *Lee,* 11 Paige, 107 ; *Skinner* v. *Maxwell,* 66 N. C., 45.

But the complaint does not present a claim to the destroyed goods, or to the insurance money paid therefor upon the basis of· an annulled contract, revesting title in the vendors, (if such a claim can be entertained for the money, as a substitute for the goods), but proceeds upon the existence of a valid obligation, or of such fraudulent conduct in obtaining the goods as to make the defendant liable in an action for the tort.   But whatever construction the complaint may bear, the fund in the hands of the clerk is collected and paid in under the attachment, the dissolution of which

is followed by the restoration to the debtor of his property thus taken.

We are asked to correct the judgment so as to leave the money where it is, until final judgment, upon the ground that a disputed fund *in custodia legis* will be retained until the conflicting claims of parties are determined, and for this is cited, among other cases as to the rule in equity, that of *Bruff* v. *Stern*, 81 N. C., 183. None of them however sustain the contention of the appellants, that a fund taken under judicial process from a person wrongfully, will not be restored when the wrong appears and is adjudged. *Perry Tupper*, 70 N. C., 538; *Meroney* v. *Wright*, 84 N. C., 336.

In *Bruff* v. *Stern*, most in point, the assignee in a deed of trust was allowed to interplead and set up title to the property attached, and issues thus raised between him and the plaintiff were directed to be made up for trial before a jury, pending which the court refused to restore the property to the defendant, and thus to his assignee acting in coöperation. But here, the fund belongs to the debtor, and there is not a contest about the title requiring its retention and an interference with the order of restitution.

It is insisted further for the appellants that the finding of facts is partial and does not cover the entire ground assigned in the affidavits, and in this respect is insufficient.

An examination of the affidavits does not satisfy us that the alleged defect really exists. The first in time repeats the account of the ineffectual visit to defendant's place of residence for the purpose of securing payment of his principal's claim, the purchase of goods and their insurance, the defendant's collection of part of the insurance money and refusal to apply it to his debts, and upon information that he intends to collect the residue and fraudulently conceal it, and thus evade the payment of his debts. The second affidavit repeats the same charges—that the defendant has in his hands or under control funds amply sufficient to

meet all his debts, and, with the connivance of the other defendants except the insurance company, is endeavoring fraudulently to secrete the same as well as conceal himself, to defeat the payment of his debts and escape the service of process, and to leave the state.

It is difficult from such loose allegations to ascertain the specific acts charged, which in connection with the imputed fraudulent purpose are relied on to justify the arrest and attachment, though each affidavit is full of epithets of fraud and fraudulent designs. The court therefore in negativing the allegation of a fraudulent concealment of the person of the defendant to avoid process, finds in the same indefinite manner in which the charges are made, the absence of any just grounds for either of the writs. We are not therefore at liberty to correct the judgment for this assigned error. When the allegation is distinct and specific, the responsive finding should be so.

We do not wish to be understood as giving our sanction to the form of the present suit in the union of so many separate causes of action in separate plaintiffs, whether the action be founded in contract or tort, unless when in pursuit of a common fund in which each has an interest, to which class the present action as we interpret the statements in the complaint does not belong.

We confine ourselves solely to the interlocutory ruling which the appeal brings for review.

It must be declared there is no error, and this will be certified.

No error. Affirmed.