(Huron Co., Common Pleas Court, 1897.)

HOOVER & WOODWARD v. F. S. HASLAGE.

---

1. *Sufficiency of affidavit for attachment—*

It is unnecessary, in an affidavit for an attachment, to allege the facts constituting the cause of action on which the attachment is based. The plaintiff is required to state only the "nature of the claim." An affidavit which states that the action is "upon a book-account for merchandise sold to said defendant, amounting to $471.47", is, in this respect, a substantial compliance with the statute, and sufficient.

2. *Waiver of exemption in lieu of homestead—*

A right to select and demand property in lieu of a homestead exemption may be waived by a debtor; but mere failure to make such selection and demand for any time short of that permited by the statute, is not such a waiver.

3. *Selection before levy—*

The statute does not require that the selection shall be made after a levy or from property levied on. The selection may be made before or at the time of the levy, by withholding and concealing property for the purpose and with the effect of preventing a levy upon it.

4. *Equitable principles applicable—*

Although exemption rights are statutory they are to be construed and applied so as not to work fraud. Equitable principles are applicable to contentions in which they are asserted. The fraudulent concealment and withholding of property to an amount and value equal to or greater than that exempted by law, will be construed as an election to hold such property as exempt, and the debt-

or is estopped from claiming, in addition to the property so withheld, that levied on.

5. *The family of the debtor—How affected—*

Exemptions in lieu of homesteads are designed for the benefit of the debtor's family; but in making the selection and subsequent disposition of the property selected, the debtor represents the rights and interests of his family. Whether he selects property levied on, or waives his right to select it by withholding other property, his family are bound by such selection or waiver. If he fraudulently withholds property to the entire amount and value allowed by law, he will be refused that levied on, not to punish him or his family for his dishonesty, but because he, and his family through him, have already received all that the law exempts from application to his debts.

---

WILDMAN, J.

The petition in this case is for money only, founded on an account attached, and was filed in this court on the 29th day of June, 1897. At the same time an order of attachment and garnishment was issued on the affidavit of the plaintiff, and served. The Phoenix Insurance Company, as garnishee, answered, admitting an indebtedness to the defendant for unpaid insurance to the amount of $676.77, subject to prior attachments in favor of other parties for debts and costs aggregating $251.46, leaving a balance of $425.31 applicable to any legal claim of the plaintiffs herein, unless the attachment is invalid, or defendant is entitled to the fund mentioned as exempt property in lieu of a homestead.

A motion has been filed by the defendant for a discharge of the attachment, and a demand has been interposed by him for the money as exempt.

It is insisted by counsel for the defendant in oral argument that the affidavit for attachment is defective in form, in not sufficiently stating the nature of the plaintiff's claim, and in not alleging positively the amount due. As to the first of these objections, the affidavit states that the action is "upon a book account for merchandise sold to said defendant, amounting to $471.47". This I deem a sufficient statement of the nature of the claim sued on. It is not necessary to allege the facts constituting the cause of action, as in a petition, but only the "nature of the claim" (R. S. 5522). As to the other objection urged in argument, further reference to the affidavit shows a substantial compliance with the statute. The affidavit alleges "that said claim is just" and that plaintiffs "ought to recover thereon the said sum of $471.47." The averments recited, with the other averments of the affidaivt, fully fill the requirements of the statute as embodied in sections 5521 and 5522.

As further reason for not holding the affidavit formally defective, it may be noted that the two objections to it which have been referred to, are not raised in the motion to discharge the attachment, but are first offered in argument. The sole ground for discharging the attachment stated in the written motion of defendant is that the allegations of plaintiffs' affidavit are untrue.

I am fully satisfied from a careful examination of all the evidence before me that the motion to discharge is not well taken, and that not only is the affidavit for the attachment sufficient in form, but that it is true in fact, in respect to one or more of the grounds for attachment provided in the statute. Sometime prior to the issue of the attachment the defendant had received from insurance companies other than the one garnisheed and from other sources considerable sums of money, and on the 28th and 29th of June, 1897, he had in his hands, as the evidence clearly enough discloses, about the sum of $1000. When questioned concerning this, he at first, on June 28th, according to Mr. Alvord's affidavit, denied having received a dollar from any of the insurance companies. This statement he denies, but he does not dispute the statement of Mr. Henry that in another conversation, had on the 29th, although then admitting that he had received some money from the insurance companies, he refused to disclose its amount. Nor does he dispute Mr. Henry's statement that in the conversation referred to he admitted that he did not intend to pay any obligations until he should receive the entire amount due him from the insurance companies, and should convert the remainder of his stock of goods into cash; that he refused to state how much money he had in his possession or under his control, and that he declared that he had not enough to satisfy a certain claim amounting to $782.26, held by the firm of Babcock, Hurd & Co. The conduct of the defendant as maintained in these conversations and as disclosed in the evidence of other witnesses, clearly indicates that he intended to get his property as far as possible into such form and keep it so concealed that he might be enabled to take his own time and terms to settle with his creditors, if, indeed, he intended to settle with them at all. That at the time of the attachment he had property which he concealed, and that he intended to convert other property into money for the purpose of placing it beyond the reach of his creditors. I find from the evidence.

The motion to discharge the attachment is not, I think, well taken, and must be overruled.

The demand for the sum of five hundred dollars from the fund attached, in lieu of a homestead, raises a question not so easy of solution, and one which, I believe, has never been passed upon in any reported case in Ohio, except in one instance by a court of common pleas.

Before considering the precise question which I think is presented by the facts of the case before me, it is proper to dispose of some of the incidental propositions and citations of counsel.

That to select and hold exempted property, demand therefor must be made at the time of the levy, is clearly not the law in Ohio. The decisions in other states holding such prompt selection necessary, are inapplicable under our statute, which provides (R S. 5441) that the selection may be made "at any time before sale." True, in this case there can be no sale. The contest is as to a fund attached in the hands of a garnishee. The fund is bound from the time of service of the written notice of garnishment (R S 5538). If, instead of a fund, the garnishee held chattel property of the defendant, the court might, after the garnishee's answer to that effect, order such chattel property to be delivered into court (R. S. 5550) Or, in this case, under the same section, the court might order the fund to be paid into court. Until such order and compliance therewith, moneys and chattels in the hands of a garnishee would seem to be alike subject to any legal selection by a defendant as exempt from subjection to a plaintiff's claim. Indeed, after the chattels had come into the possession of the court, but before sale thereof by the court's order, such chattels would still be subject to selection, and in the absence of any time limitation of the defendant's right to select money, the nature of which precludes a sale, I see no reason for holding that the statute contemplates such limitation.

A dictum of Judge McIlvaine in Chilcote v. Conley, 36 Ohio St., 549, which, like the case before me, was a claim of exemption of a garnished fund, asserts that the debtor may select the money so attached at any time before its application upon the creditor's debt.

It suffices, however, so far as concerns this case to hold, that a selection is seasonable if it be made while the fund has still not come into the custody of the court, but remains with the garnishee for future disposition. Such holding is not inconsistent with the rule that a debtor may by words or acts waive the right to an exemption, as established in the cases of Frost v. Shaw, et al., 3 Ohio St, 270, and Butt et al v Green, 29 Ohio St., 667, 670. Mere failure to exercise the right of selection does not constitute a waiver, if such failure be not protracted beyond the period within which such selection is permitted to be made.

It is said by plaintiff's counsel in oral argument that attachments upon claims of other parties issued by a justice of

the peace, became liens on this garnished fund, prior to the lien of the plaintiffs herein, and that the suits in which said attachments were issued, have proceeded to judgment. This statement, which is not very clearly sustained by the evidence except as to one suit, is made the basis of an argument that by not insisting in those suits on his exemption, the defendant has waived his right to insist on it here.

But I am not clear that even in those cases, assuming the facts to be as claimed by counsel, the defendant might not still demand his exemption unless he has waived the right in some other way than by letting the suits go to judgment and order upon the garnishee to pay the money upon the judgment debts. Drake on Attachment, page 202, is cited in support of the contention; but in Close v Sinclair, 38 Ohio St., 530, it was held that "an order for the sale of the attached property, made in the proceeding in attachment, does not prevent the debtor from exercising his right of selection after the making of such order of sale." In the case cited, orders of sale were made at the time of rendering final judgments and as a part thereof. It is said in Judge White's opinion, that "it is claimed on behalf of the plaintiffs in error, that the orders of sale in the attachment suits had the effect to cut off the right; that such orders, in effect, adjudged that the defendant had no right to hold the attached property exempt from sale. We do not think so. The effect of the attachments and the subsequent orders of sale, was no greater in regard to the right of exemption, than would have been had by a judgment and execution thereon, levied on the same property."

Applying the principle of this holding and that of Judge McIlvaine's opinion already cited (in Chilcote v. Conley, 36 Ohio St., 549), I do not find that the alleged judgments and orders in the justice's court in any way affect the defendant's right of exemption even in those suits themselves. A fortiori, they cannot stand in the way of the clam asserted here. The principle may be inconsistent with some adjudications in other states cited in Waple on Homestead and Exemption, page 882, but the law for Ohio is clearly as I have stated it.

There is still another question however, arising on this claim for exemption which is not so easily disposed of. While the selection of exempt property may be made at any time before sale, the right to the exemption must exist at the time of the levy. (See Nixon v. Vandyke, 2 C. C. 63 Carter et al. v. Ross, 8 C.C139; and Selders v. Lane, 40 Ohio St., 345, 346.

What, then, were the rights of the parties at the time of the levy of the attachment, in view of the fact, already found, that the debtor had then in his hands more than double the amount of property which he was entitled to select, money which he not only did not turn out to the officers, but kept in concealment so that it could not be reached by legal process? This is the question which, as I have said, has been passed upon in but one reported case in Ohio. There is a dictum in Hellebusch, et al. v. Richter et al., Ham Dist. Court, 2 W. L. Bull., 128, to the effect that ownership of personal property not levied on, to an amount in excess of the statutory exempiton, will not defeat the right to the selection. This, however, while manifestly true under the statute, does not meet the question. It is the deliberate and purposed withholding of property from levy, not its mere ownership, that should defeat the right to select attached property, if it is defeated at all. The mere ownership of property is not a selection of it as exempt. The fraudulent concealing and withholding of it may amount to an election to hold it instead of pursuing that levied on.

In the case of Clark v. Hicks et al., 2 Cleveland Law Reporter, 129, the Court of Common Pleas of Cuyahoga county met substantially the question here presented. The syllabus reads as follows: "A debtor has the right to select in lieu of homestead the personalty levied on by an execution, and such debtor may replevy the personalty without regard to the fact that he may have other property which he refuses to disclose."

While this decision is entitled to respect, it should not be followed unless founded upon correct legal principles. Before considering whether it is or not, it will be well to note that the courts of other states are by no means in accord with one another on the question.

I have examined all that have been cited by counsel, and such others as I have been able to find. To the extent that they are affected by local statutes it will be idle to discuss them. In many of the states the danger of permitting a debtor to carry off a larger exemption than that contemplated by the statute, has been guarded against by requiring him to make the selection at the time of the levy, or to file a schedule of all his property subject to seizure, making it accessible to an officer holding an attachment or exceution. Unfortunately, in Ohio we have no such safeguards, and if the opinion of the court in Clark v. Hicks, supra, is correct, there is no legal method of preventing the boldest frauds by debtors. True, as said in Megahe v. Draper, 21 Mo. 510 (64 Am. Dec. 245), the officer might "ferret out the hidden property and take steps to reach it," but such remedy is difficult, and would in most instances prove unavailing. A creditor ought not to be forced to resort

to it unless he is plainly so required by law.

At first blush, it would seem like absurd child's play for a court to release a fund from its control against the protest of a creditor, and then immediately, at the instance of the same creditor, set about finding it again or an equivalent sum from the same debtor.

The ground upon which the Missouri court bases its decision, is that the exemption is designed, not for the benefit of the debtor alone, but for his family. That such is the purpose of the exemption is as true in Ohio as in Missouri. I need not cite the repeated adjudications to that effect.

Were it not for this principle, the problem would be an easy one; for to allow the debtor, were he the only one concerned, to profit by his own fraud, would be contrary to every principle of justice. The secreting and withholding from legal process of property greater in value than that exempted by law, should surely operate as an estoppel against the party so seeking to defeat the very law under whose merciful and beneficient provisions he claims.

"The family argument" says Mr. Waples, Homestead and Exemption, page 918, "is better. The law makes the wife and children of the debtor beneficiaries; and their representative, the head of the family, ought not to be allowed to injure them by his frauds."

Mr. Waples, however, while collecting in foot notes on pages 917-918 the various authorities bearing on the question, leaves it undecided. My impression, from an examination of the cases cited, so far as they have been accessible to me, is that the current of authority is decidedly adverse to the allowance of the exemption under circumstances analogous to those of the case before me. The principle is expressed as follows in Naumburg v. Hyatt., 24 Fed. 898, 905: "Before a dishonest debtor can be legally entitled to exemptions, all of his property must be available to creditors, and the debtor must not retain any of the fruits of his fraud, or remain in the enjoyment of any of his property except his exemptions. If any of his property remains in his hands unappropriated to creditors, or be by him put out of their reach by any fraudulent device or arrangement, then such property to the extent of its value, will be regarded by the law as a satisfaction of his claim for exemption." See also in the same direction Bruff v. Stern, 81 N. C. 183; Freeman v. Smith, 30 Pa. St., 264; Gilleland v. Rhoads, 34 Pa. St., 187; Strouse v. Becker, 38 Pa. St., 190; Smith v. Emerson, 43 Pa. St., 456; Kreider's Estate, 135 Pa. St., 578; McNally v. Mulherin, 79 Ga. 617; Mandlove v. Burton, 1 Ind. 39; Cassell v. Williams, 12 Ills., 387; Cook v. Scott, 6 Ills., 344; and

Brackett v. Watkins, 21 Wend., 68.

One of the cases above cited, that of Strouse v. Becker, 38 Pa. St., no page 192, thus expresses the view of the court as to the duty of the debtor when asking for himself and family the benefit of the law: "When an officer comes with an execution, it is the duty of the debtor as a good citizen, if he cannot pay the debt, to facilitate the making of a levy. He should exhibit his property honestly, and claim only the exemption which the law allows him."

The principle has been applied in another form in some of the states, where it seems to have been substantially held that a fraudulent conveyance of one homestead by a debtor will prevent his holding another homestead or property in lieu thereof as exempt. See Currier v. Sutherland, 54 N. H. 475; Woodall v. Rudd, 41 Texas, 375, and see also Tourville v. Pierson, 39 Ills. 447; Horne v. Tufts, 39 N. H., 483; and Thompson on Homesteads and Exceptions, sec. 419. Such rule is not in conflict with that adopted in Ohio that the particular property fraudulently conveyed may still be claimed as exempt if the fraudulent conveyance is set aside at the suit of a creditor. See Sears v. Hanks, 14 Ohio St., 298, and Tracy et al. v. Cover, 28 Ohio St., 61.

Returning to the argument in favor of the allowance of the exemption based upon the conceded theory that it is designed for the benefit of the debtor's family; it may pertinently be said that no theory should be permitted to prevent the law so as to work evil instead of beneficence, fraud instead of justice. As well said by Mr. Waples (Homestead and Exemption, page 511), "Homestead rights are to be protected according to law, but are not to be preverted into instruments of fraud."

While the exemption laws are to be construed with such liberality as to promote their real object and protect the poor from oppression, there should be such construction as will enable a debtor to obtain a larger benefit than the law contemplates. Their application should not be excepted from those general principles of equity which the courts recognize. I quote again from Waples: "The trite maxims: 'He who seeks equity must do equity', and 'A party must come into a court of equity with clean hands', are applicable to homestead contentions as well as to any other in equity courts, and have been applied to them." Waples Homestead and Exemption, page 528; and see Winslow v. Noble, 101 Ills., 194, 198; Drake on Attachments, sec. 244; 51 Pa. St., 90; and 68 Pa. St., 219.

Freeman, in his work on Executions, sec. 212, says; "The right of selection must be so exercised as not to work a fraud upon the creditor by permitting

the debtor to select as exempt that which has been levied upon, and at the same time conceal or dispose of other property which might have been levied upon had the right of selection been properly exercised. If the defendant has a greater number of chattels of any kind than is exempt from execution, and removes or conceals any of them to avoid a levy thereon, this is conceded to be an irrevocable election to claim as exempt the property so removed or concealed, and he will not be permitted to afterward claim in its stead property levied upon."

The doctrine that the withholding of a part of his property by the debtor, is an election to claim the property so withheld as exempt, is also expressed by Mr. Thompson (Homestead & Exemptions, sec. 437) as follows:

"A debtor who puts exempt property out of the way of the levying officer will be deemed to have elected to retain it, and, consequently, cannot claim another chattel of the same kind exceeding with the concealed property, the number exempt, when it is levied on."

Now, although the exemption is for the benefit of the debtor's family, it may be demanded, selected, and received by the debtor himself, and the court exercises no supervision over its disposition after it reaches the debtor's hands. There is no more presumption that the $500 claimed as exempt, would be by the defendant herein expended for the benefit of his family, than that he will use the $1000 already in his hands for the same purpose. It is not the intent of the law that either the debtor or his family, or both together, shall hold $1500 exempt from levy.

Whoever makes the selection, whether the debtor or his wife, it is made for the family, and if, by the holding back · of all that the law entitles them to, the selection has been made, both and all are estopped from further selection and claim.

The idea of a selection of the fund in the hands of the garnishee is more fanciful than real. It is not that the bird in the bush is better than the two birds in hand. The debtor does not select the fund in the court's power of control because he likes it better, because it is better or more desirable money; but he demands it only that he may hold it and that already in his hand. There can be in the case of a claimed selection of money under the circumstances of this case no other conceivable motive.

In making the demand and selection, the debtor represents whatever rights or interests his family have in the matter. But it is his personal choice, his selection, that is exercised, and I see no reason why he may not select in advance of the levy if he choose, or waive a selection altogether.

"Exemptions are personal privileges granted to debtors," says Waples. "They may be forfeited by fraud, or waived by contract or neglect to claim them." Waples' Homestead & Exemption, page 547.

Our statute (R. S. 5441) does not require the selection to be made from the property levied on. It does not preclude the debtor from selecting before levy and reserving from levy property to the exempted amount if he so wish. Nor does it preclude his waiver or surrender of the privilege. That he may waive it, notwithstanding the interest his family may have in the matter, has been established by our supreme court. See Frost v. Shaw, et al., 3 Ohio St., 270, 274; Butt v. Green, 29 Ohio St., 667.

Entertaining the views which I have expressed, I must refuse to allow the exemption demanded. The application of the debtor therefor will be refused.

Jesse Vickery, and Theo. Alvord, for plaintiff.

P. N. Schuyler, for defendant.